**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEROME COOLEY,** | ) | |
| | ) | **Case No.:  4:25-CV-910 JSD** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| **CITY OF ST. LOUIS, a municipal corporation,** | ) | |
| | ) | |
| **CHERYL POGUE,** | ) | |
| **in her official and individual capacities,** | ) | |
| | ) | |
| **EDWIN YOUNG,** | ) | |
| **in his official and individual capacities,** | ) | |
| | ) | |
| **JAMES WILSON,** | ) | |
| **in his official and individual capacities,** | ) | |
| | ) | |
| **DANIEL EARLEY,** | ) | |
| **in his official and individual capacities,** | ) | |
| | ) | |
| **and** | ) | |
| **PAT WACTOR,** | ) | |
| **in his official and individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

## JURISDICTION AND VENUE

1.  Plaintiff Jerome Cooley ("**Plaintiff**") brings these claims pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the First and Fourteenth Amendments, as incorporated as against states and their municipal divisions through the Fourteenth Amendment.

2.   The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution of the United States and § 1343(a)(3) to redress the deprivation of rights secured by the Constitution of the United States.

3.   Venue is proper in the Eastern District of Missouri District Court because a substantial part of the events giving rise to the claims occurred in the City of Saint Louis and the Plaintiff resides in the City of Saint Louis, Missouri.

4.   Plaintiff requests a trial by jury on all issues herein that are so triable pursuant to Missouri Supreme Court Rule 69.01.

## PARTIES

5.   Plaintiff is a citizen of the United States and of the State of Missouri, who resides in the City of Saint Louis, Missouri.  At all times relevant herein Plaintiff did reside at that address and was a citizen of the United States of American and of the State of Missouri.

6.   Defendant City of Saint Louis (hereinafter sometimes referred to as the "**City**") is a first-class city, and a political subdivision of the State of Missouri organized and existing under the laws of the State of Missouri and located within the State of Missouri.

7.   The City's address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

8.   Defendant Cheryl Pogue (hereinafter sometimes referred to as "**Defendant Pogue**") at all times relevant herein was a citizen of the United States of America and of the State of Missouri and an employee of Defendant City of Saint Louis. Her business address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

9.   Defendant Edwin Young (hereinafter sometimes referred to as "**Defendant Young**") at all

times relevant herein was a citizen of the United States of American and of the State of Missouri and an employee of Defendant City of Saint Louis. His business address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

10. Defendant James Wilson (hereinafter sometimes referred to as "**Defendant Wilson**") at all times relevant herein was a citizen of the United States of American and of the State of Missouri and an employee of Defendant City of Saint Louis. His business address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

11. Defendant Daniel Earley (hereinafter sometimes referred to as "**Defendant Earley**") at all times relevant herein was a citizen of the United States of America and of the State of Missouri and an employee of Defendant City of Saint Louis as a detective within its police department.  His business address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

12. Defendant Pat Wactor (hereinafter sometimes referred to as "**Defendant Wactor**") at all times relevant herein was a citizen of the United States of America and of the State of Missouri and an employee of the Defendant City of Saint Louis as a police officer.  His business address is 1200 Market Street, Saint Louis, Missouri 63103-2826.

## FACTS COMMON TO ALL COUNTS

13. Plaintiff has been employed continuously by the City for more than thirty-three years.

14. Upon information and belief, certain employees of the City beginning not later than 2019 were suspected to have engaged in ongoing unlawful conduct related to vehicles that had been taken to the City's tow lot (hereinafter sometimes referred to as the "**Tow Lot**"). Such suspected conduct included unlawful use of vehicles possessed by the City at its Tow Lot and unlawful sales of vehicles possessed by the City at its Tow Lot.

15. The conduct referenced above in Paragraph 14 was believed to involve City employees using vehicles at the Tow Lot for personal use and improper sales of vehicles at the Tow Lot.

16. A retired City police officer was charged with defrauding vehicle owners, lienholders, and buyers related to vehicles that were towed by a company under contract with the Saint Louis Metropolitan Police Department (the "**SLMPD**,") which is a department of the City.

17. Certain City employees were charged with stealing personal property from vehicles being stored on the City of Saint Louis's tow lot (the "**Tow Lot**.")

18. A Saint Louis area television station known as KMOV ("**KMOV**") reported in or about June 2019 that a stolen vehicle that had been towed to the City of Saint Louis tow Lot was found at the home of a City employee who worked at the Tow Lot. KMOV reported in or about June 2019 that certain vehicles that were to be crushed for scrap had been removed from the Tow Lot. Plaintiff reported such suspected conduct to the City of Saint Louis in a timely manner and reported the suspected misconduct to Saint Louis area journalists and to a Missouri state senator.

19. The City on or about October 17, 2019 retaliated against Plaintiff by deciding to transfer Plaintiff from its Towing Division to another of its Street Department divisions, the Refuse Division. Upon information and belief, the City caused Plaintiff's transfer (the "**Transfer**") in part because Plaintiff "talked too much." The Transfer occurred on or about November 4, 2019.

20. After the Transfer, the City subjected Plaintiff to much less desirable work duties and a much less desirable work environment than Plaintiff experienced prior to the Transfer.

21. Upon information and belief, a director of operations employed by the City instructed a supervisor of Plaintiff's after the Transfer to give Plaintiff "back breaking work."

22.   In or about December 2019, the City of Saint Louis hired a commissioner (the "**Commissioner**") of the towing division for the purpose of supervising activities at the City of Saint Louis tow lot.

23.   Upon information and belief, the City fired the Commissioner after the Commissioner reported misconduct of a nature similar to that described by the Plaintiff.

24.   City employees who worked at the Tow Lot told a City employee named Angelica Woods ("**Woods**") of Plaintiff's that Woods could acquire inexpensive vehicles for herself, for her family members, and for friends from the city's Tow Lot.  Woods communicated to such employees that Woods would not participate in such conduct.

25.   Woods was a Plaintiff in a lawsuit against the City and James Wilson, in his individual and official capacities in the United States Eastern District of Missouri Court, Eastern Division. Woods' lawsuit included a 42 U.S.C. § 1983 count for Violation of Plaintiff's First Amendment rights.

26.   Cooley reported suspected unlawful activity by City employees related to the Tow Lot to certain Tow Lot supervisors.

27. Cooley communicated information about suspected unlawful activity to certain supervisors, to a journalist, and to a state senator in an effort to prevent further unlawful activity and to try to protect the rights of those who might be harmed by unlawful activity related to the Tow Lot.

28.   In or about November 2019, Plaintiff's co-worker Woods reported to City of Saint Louis Commissioner of Streets Kent Flake that City of Saint Louis employees working at its Tow Lot were engaging in the following conduct:  overcharging tow fees; not working while "on the clock;" sleeping while at work; falsifying documents by omitting a name or putting a false address on documents related to purchases of vehicles from the city's tow lot; towing and storing personal

vehicle on the tow lot; engaging in private towing when dispatched calls were not being responded to; vehicles being removed from the tow lot after work hours; non-city employees being allowed to go through City tow lot files searching for vehicles which those non-city employees later purchased; non-city employees being given access to keys to vehicles on the city's tow lot; and certain of the city's tow lot employees allowing a certain individual to purchase vehicles auctioned by the city for an amount less than the amount bid at auction, certain of which were subsequently transferred to certain of the city's tow lot employees.

29.   Upon information and belief, after Woods reported Tow Lot employee misconduct, she was subjected to certain City Employees deriding her as a "snitch" and otherwise subjecting Woods to a hostile work environment, which, upon information and belief, was for the purpose of forcing her to resign her employment or to induce her to act in a manner for which the city allege it was terminating her employment for good cause.

30.   Certain City employees likewise subjected Plaintiff to a hostile work environment after Plaintiff reported suspected unlawful conduct by City employees. Upon information and belief, certain City employees attempted to cause and did cause Plaintiff severe emotional distress in an effort to coerce Plaintiff into not further reporting unlawful conduct by City employees related to the Tow Lot.

31.   On August 27, 2019, Defendant Young made a complaint to the SLMPD against Plaintiff falsely alleging that Plaintiff had committed criminal conduct against Defendant Young. Defendant Young, aided by Defendant Pogue, caused the arrest (the "**Arrest**") of Plaintiff by City police officers.   Pursuant to the Arrest, the SLMPD seized Plaintiff's cellular telephone and firearm, neither of which have been returned to Plaintiff.

32.    Defendant Daniel Earley and Defendant Wactor both directly caused the Arrest of Plaintiff.

33.    Detective Leo Rice, an employee of the City's police department, assisted in the Arrest of Plaintiff.

34.    Pursuant to the Arrest, Plaintiff was initially charged with two counts of 2nd degree harassment, which charges were both dismissed.

35.    Defendant Young unsuccessfully attempted to obtain an order of protection against Plaintiff, which upon information and belief was motivated by a desire to intimidate Plaintiff into not further reporting suspected unlawful conduct by City employees and to cause emotional distress to Plaintiff for Plaintiff's prior protected communications.

36.    On or about September 30, 2021, in the course of his employment by the City of Saint Louis in the Refuse Division, Plaintiff sustained a serious right shoulder injury (the "Right Shoulder Injury").

37.    Plaintiff reported the Right Shoulder Injury to the City of Saint Louis, obtained all available medical treatment for the injury, complied with medical treatment for the injury, and filed a workers compensation claim, which was numbered 21-070540 that is still pending.

38.    In or about April 2022, Plaintiff became aware that Defendant Waelterman had placed an enlarged copy of Plaintiff's driver's license on a wall of Defendant Waelterman's office, causing many persons, including certain job applicants, to view the information contained in Plaintiff's driver's license including a photograph of Plaintiff, Plaintiff's home address, Plaintiff's driver's license number, and a document distributor number pertaining to Plaintiff's driver's license. Waelterman's conduct had no legitimate purpose, was an invasion of Plaintiff's right to privacy,

and upon information and belief was intended to cause Plaintiff severe emotional distress and to deter Plaintiff's exercise of his free speech rights.

39.   Plaintiff believed Defendant Waelterman's conduct described above in Paragraph 36 showed a gross disregard for Plaintiff's rights by Defendant Waelterman and was willful and malicious and was within the scope of his employment. Such conduct consequently did cause Plaintiff severe trauma, fear, apprehension, anxiety, consternation, and severe emotional distress.

40.   Plaintiff filed an internal affairs complaint (hereinafter sometime the "**Internal Affairs Complaint**") with the SLMPD, which to date has not resulted in accountability with regard to Plaintiff's arrest, seizure, and property destruction by the SLMPD.

41.   The City had a pattern and practice of retaliating against employees for reporting unlawful conduct of other city employees, and such pattern and practice was adopted and maintained by the City of Saint Louis.

42.   In or about 2024, Plaintiff testified as a witness on behalf of his former co-worker in her federal lawsuit against the City of Saint Louis for employment discrimination that was number 4:21-CV-00462 (the "Woods Case").

43.   In 2025, Plaintiff, both orally and in writing filed a request for a reasonable accommodation under the Americans with Disabilities Act and under state law.

44.   The City of Saint Louis denied Plaintiff's request for a reasonable accommodation, based in part upon shoulder injuries Plaintiff sustained in the course of completing his job duties after the City of Saint Louis transferred his employment involuntary from the towing division to the refuse division.

45.   Plaintiff's shoulder injuries resulted from his completion of job duties mandated in his refuse division job that were not required in his job in the towing division.

46.    The City of Saint Louis in or about mid-2025 refused to allow Plaintiff to transfer to an available janitor position in the city's police department, a position Plaintiff was qualified for and could perform despite his shoulder injuries.

47.    The City of Saint Louis in or about September 2025 refused to allow Plaintiff to continue to work a "desk job" that the City had allowed Plaintiff to perform since around October 2024. The City then gave the "desk job" to another employee, who, upon information and belief, the City allowed to work the "desk job" as a reasonable accommodation after sustaining a job-related disability.

48.    The City of Saint Louis in October 2025 and on or about October 16, 2025, approved Plaintiff's request for leave under the Family Medical Leave Act with approved continuous leave from October 25, 2025 through January 17, 2026.

49.    On October 30, 2025 the City of Saint Louis issued a letter (the "Letter") stating that Plaintiff's employment was being terminated with his last day of work being November 5, 2025 due to his inability to perform the basic or essential functions of his job as a utility worker.  The Letter was not given to Plaintiff until November 3, 2025.  At the time of Plaintiff's termination the City had custodian positions available both in the Refuse Division and at lease one other division that the City refused to offer to Plaintiff.

50.    Upon information and belief, the City of Saint Louis transferred Plaintiff in retaliation for Plaintiff's whistleblowing about unlawful Towing Division activities in or about 2019 from a job that did not place Plaintiff at risk of sustaining shoulder injuries to a utility worker job in the Refuse Division that placed Plaintiff at risk of sustaining shoulder injuries and which did result in Plaintiff's sustaining injuries to both shoulders including at lease one torn rotator cuff.

51.    The City of Saint Louis's refusal to afford Plaintiff a requested reasonable accommodation was in retaliation for Plaintiff's whistleblowing described above, was in violation of Plaintiff's rights under the Americans with Disabilities Act and related state law, and was in violation of Plaintiff's rights under the Family and Medical Leave Act of 1993.

## COUNT I
### 42 U.S.C. § 1983-Fourth and Fourteenth Amendment Violations:  Unreasonable Seizure
### (Against All Defendants)

52.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

53.    Defendants knew or should have known that the SLMPD did not have probable cause to arrest Plaintiff.

54.    Defendant unreasonably seized Plaintiff, thereby depriving Plaintiff of Plaintiff's right to be free from unreasonable seizure of Plaintiff's person in violation of the Fourth and Fourteenth 2019Amendments to the United States Constitution.

55.    Defendants lacked any objectively reasonable belief that Plaintiff had committed a criminal offense, nor was there even arguable probable cause for the arrest.  As such, the seizure of Plaintiff, Plaintiff's firearm, and Plaintiff's cellular telephone were unreasonable.

56.    Defendants engaged in these unlawful seizure actions willingly and knowingly, acting with reckless or deliberate indifference to Plaintiff's Fourth Amendment rights.  As a direct and proximate result of Defendants' unlawful actions, Plaintiff was damaged.

57.    At all times, Defendants were acting under color of state law.

58.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff seeks entry of an order for Count I granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

## COUNT II
### 42 U.S.C. § 1983-First and Fourteenth Amendment Violations
### (Against All Individual Defendants)

59.    Plaintiff incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

60.    Plaintiff has a fundamental right to communicate facts that indicate that employees of his employer have engaged in unlawful conduct that violates the property rights of others.

61.    Communications of information about unlawful conduct by co-workers is protected by the freedom of speech and the freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

62.    Defendants' actions violated Plaintiff's First Amendment rights to freedom of the press and freedom of speech by interfering with Plaintiff's ability to gather information and communicate information about a matter of public interest.

63.    Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiff's First Amendment rights.

64.    As a direct and proximate result of Defendants' unlawful actions described herein, Plaintiff has suffered damages including: physical injury, emotional trauma, fear, apprehension, anxiety, consternation, and emotional distress.

65.    Defendants' actions described herein have had a chilling effect on Plaintiff, who is now less likely to participate in free public discourse.

11

66. At all times, Defendants were acting under color of state law.

67. If Plaintiff prevails, Plaintiff is entitled to recover attorney's fees.

WHEREFORE, Plaintiff seeks entry of an order for Count II granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

### COUNT III
### 42 U.S.C. § 1983-Conspiracy to Deprive Civil Rights
### (Against All Defendants)

68. Plaintiff incorporates the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

69. Defendants acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights.

70. In furtherance of Defendants' conspiracy, Defendants committed the following overt acts: unlawful seizure of Plaintiff, Plaintiff's firearm, and Plaintiff's cellular telephone, and the initiation of charges against Plaintiff that would chill a person of ordinary firmness.

71. As a direct and proximate result of Defendants' actions, Plaintiff suffered and will continue to suffer emotional trauma and distress.

72. The acts described herein were intentional and callously indifferent to the rights of Plaintiff.

73. At all times, Defendants were acting under color of state law.

74. If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff seeks entry of an order for Count III granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

**COUNT IV**
**42 U.S.C. § 1983-Municipal Liability**
***Monell* Claim against Defendant City of St. Louis for Failure to Train, Failure to Discipline to Supervise, and for a Custom of Constructing Unreasonable Search and Seizures and Use of Excessive Force**
**(Against Defendant City of Saint Louis)**

75.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

76.    Defendant City of Saint Louis is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the other Defendants' violations of Plaintiff's rights because the violations were caused by a policy, practice, or custom of the St. Louis Metropolitan Police Department of regularly conducting unreasonable seizures and arresting individuals without probable cause.

77.    Defendant City of Saint Louis has inadequately trained, supervised, and disciplined its police officers with respect to the conducting of seizures including arrests of individuals without probable cause.

78.    Defendant City of Saint Louis in failing to adequately train, supervise, and discipline its officers with respect to lawful arrests and other seizures has been deliberately indifferent to the rights of citizens including Plaintiff, and the City's failure to adequately train, supervise, and discipline its officers is a direct and proximate cause of, the constitutional violations suffered by Plaintiff as alleged herein.

79.    As a direct result of the Defendant City of Saint Louis's failures and policies described herein, Plaintiff has suffered damages including fear, apprehension, deprivation of his liberty, and deprivation of his property including a firearm and cellular telephone and the contents thereof.

80.    If Plaintiff prevails, Plaintiff is entitled to recover reasonable attorneys' fees.

WHEREFORE, Plaintiff seeks entry of an order for Count IV granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

### COUNT V
### Missouri State Law-Conversion
### (Against All Defendants)

81.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

82.    The City's taking and failure to return Plaintiff's firearm and cellular telephone were without legal justification.

83.    The elements of conversion in Missouri are:  1) the plaintiff was the owner of the property in question or entitled to the property's possession, 2) a defendant took possession of the property with the conscience intent to exercise some control of the property, and 3) a defendant thereby deprived the plaintiff of the right to possession of the property.

84.    The defendants acted outrageously in taking and in not returning Plaintiff's firearm and cellular telephone.

85.    Upon information and belief, one or more defendants acted with an evil motive to punish Plaintiff for communicating information about apparent unlawful conduct by certain employees of the City related to the City's Tow Lot.

86.    The City's taking and retention of Plaintiff's firearm and cellular telephone conversion.

87.    The City obtains insurance from the Public Facilities Protection Corporation ("PFPC,") a not-for-profit corporation into which the City annually pays funds.  Those funds are disbursed as needed to pay claims against the City.

88.    The City's relationship with the PFPC serves as a self-insurance plan.

89.    By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610, RSMo.

90.    The action of defendants as described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury, such that this Court might determine that punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

WHEREFORE, Plaintiff seeks entry of an order for Count V granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

## COUNT VI
### Missouri State Law-False Arrest
### (Against All Defendants)

91.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

92.    Defendants arrested the Plaintiff without any legal justification and without probable cause.

93.    Defendants constrained and confined Plaintiff against Plaintiff's free will.  Defendants lacked any lawful justification for defendants' restraining and confining Plaintiff in the above manner.

94.    Plaintiff suffered as a direct result of the conduct of defendants emotional trauma, fear, and apprehension and has continued to suffered emotional distress as a result of the defendants' conduct.

95.    The conduct of defendants as described above was carried out in bad faith and with malice.

WHEREFORE, Plaintiff seeks entry of an order for Count VI granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

## COUNT VII
### Missouri State Law-False Imprisonment
### (Against All Defendants)

96.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

97.    Defendants intentionally restrained and confined Plaintiff against Plaintiff's will when they took Plaintiff into custody and detained Plaintiff.

98.    Plaintiff did not consent to defendants' actions in removing and confining Plaintiff in the manner described above, nor in any other manner.

99.    Defendants lacked any lawful justification for restraining and/or confining Plaintiff in the manner described above.

100.    Defendants confined Plaintiff for a substantial length of time, spanning several hours.

101.  Plaintiff has suffered as a direct and proximate cause of defendants' conduct:  emotional trauma, great concern for Plaintiff's safety, fear, apprehension, anxiety, consternation, and emotional distress that has persisted to the present time.

102.  By possessing insurance from a not-for-profit corporation into which the City pays funds or in the alternative being self-insured, the City has waived sovereign immunity on state claims pursuant to § 537.610, RSMo.

103.  Defendants' conduct in causing the false imprisonment of Plaintiff, as described above, were carried out with an evil motive and/or reckless indifference and conscious disregard for Plaintiff's rights.

WHEREFORE, Plaintiff seeks entry of an order for Count VII granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

### COUNT VIII
**Missouri State Law-Abuse of Process**
**(Against All Defendants)**

104.  Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

105.  Defendants made an illegal, improper, and perverse use of process by arresting, charging, and detaining Plaintiff without any legal justification or probable cause in order to harass, intimidate and to suppress Plaintiff's exercise of his constitutional rights.

106.  Defendants acted willfully and knowingly when they abused legal process for unlawful purposes and with an illegitimate collateral objective, in that Defendants used legal process

through their authority for purposes other than the legitimate investigation and prosecution of criminal acts.

107.    As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered damages including:  emotional trauma, fear, apprehension, anxiety, consternation, and emotional distress.

108.    Defendants' abuse of process as described above, was carried out with an evil motive and/or reckless indifference and conscious disregard for Plaintiff's rights.

WHEREFORE, Plaintiff seeks entry of an order for Count VIII granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

**<u>COUNT IX</u>**
**Missouri State Law-Malicious Prosecution**
**(Against All Defendants)**

109.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

110.    Defendants assisted in the filing of criminal charges against Plaintiff despite the lack of a reasonable belief that probable cause existed that Plaintiff had committed a crime or ordinance violation.

111.    The criminal charges against Plaintiff that Defendants assisted in filing were subsequently dismissed.  As a direct result of the conduct of Defendants Plaintiff suffered damages including: emotional trauma, fear, apprehension, anxiety, consternation, and emotional distress.

112.   By possessing insurance from a not-for-profit corporation into which the City pays fund or in the alternative being self-insured, the City has waived sovereign immunity on state claims pursuant to § 537.610, RSMo.

113.   Defendant's actions described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury.

WHEREFORE, Plaintiff seeks entry of an order for Count IX granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

### COUNT X
**Missouri State Law-Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

114.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

115.   By causing Plaintiff to be arrested without probable cause and in retaliation for Plaintiff's communicating truthful information about ongoing, unlawful practices by certain employees of the City related to the unlawful use and transfer of vehicles taken possession of by the City, by causing Plaintiff to be transferred to a much less desirable job, and by invading Plaintiff's privacy by publicly displaying a magnified copy of Plaintiff's driver's license, Defendants engaged in acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.

116.    Defendants actions were intentional, or at best, reckless.

117.   Defendants' sole motivations were to cause emotional distress to Plaintiff so as to deter Plaintiff's further exercise of his free speech rights.

118.    By possessing insurance from a not-for-profit corporation into which the City pays fund or in the alternative being self-insured, the City has waived sovereign immunity on state claims pursuant to § 537.610, RSMo.

119.    As a direct and proximate result of Defendants' conduct described above, Plaintiff suffered damages including:  emotional trauma, fear, apprehension, anxiety, consternation, and emotional distress.

WHEREFORE, Plaintiff seeks entry of an order for Count X granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

**COUNT XI**
**Missouri State Law-Negligent Infliction of Emotional Distress**
**(Against All Defendants)**

120.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

121.    By possessing insurance from a not-for-profit corporation into which the City pays fund or in the alternative being self-insured, the City has waived sovereign immunity on state claims pursuant to § 537.610, RSMo.

122.    The actions of Defendants described above were carried out in bad faith and with malice, and those actions were done with actual, wanton intent to cause injury.

WHEREFORE, Plaintiff seeks entry of an order for Count XI granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

## COUNT XII
### Missouri State Law-Invasion of Privacy
### (Against Defendant City of Saint Louis)

123.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

124.    Defendants exposure of Plaintiff's driver's license facsimile on the wall of the Director of Operations office in plain view of other City employees and other members of the public who came to that office was an invasion of Plaintiff's privacy.

125.    The actions of Defendants described above were carried out in bad faith and with malice, and those actions were done with actual, wanton intent to cause injury and were willful and malicious.

WHEREFORE, Plaintiff seeks entry of an order for Count XII granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

## COUNT XIII
### Replevin
### (Against Defendant City of Saint Louis)

126.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

127.    Plaintiff seeks an order from the Court compelling Defendant to return to Plaintiff Debtor's firearm and Debtor's cellular telephone.

WHEREFORE, Plaintiff prays that this Court enter an order compelling Defendant City of Saint Louis to return Plaintiff's firearm and cellular telephone that it took from Plaintiff at the time of his arrest and for such other relief as is necessary and proper in the circumstances.

**COUNT XIV**
**Discrimination in Violation of RSMo §287.780**
**(Against Defendant City of Saint Louis)**

128.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

129.    The City of Saint Louis was legally obligated to provide any medical care for Plaintiff to alleviate the effects of his on the job injury.

130.    The City of Saint Louis refused to provide necessary diagnostic medical care for an injury to Plaintiff's left shoulder that he sustained on the job as a result of his performance of work duties after his transfer to the Refuse Division.

131.    Plaintiff alleges that Plaintiff's exercise of his rights to pursue workers' compensation claim(s) was a motivating factor in the City of Saint Louis's termination of his employment and the City's engaging in other discriminatory conduct against Plaintiff.

WHEREFORE, Plaintiff prays for entry of an order for Count XIV granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

**COUNT XV**
**Discrimination in Violation of the Americans with Disabilities Act and Missouri Human Rights Act**
**(Against Defendant City of Saint Louis)**

132.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

133.    The City of Saint Louis beginning prior to and up through the date of its termination of Plaintiff's employment was aware of Plaintiff's shoulder injuries and Plaintiff's diagnosis of type two diabetes, each a disability under the ADA as well as the Missouri Human Rights Act ("MHA").

134.    The City of Saint Louis's refusal to grant Plaintiff a reasonable accommodation for Plaintiff's disabilities and termination of Plaintiff's employment despite Plaintiff's ability to continue working for the city if given a reasonable accommodation as required by the ADA was in violation of Plaintiff's rights under the ADA and in violation of Plaintiff's rights under the MHA.

WHEREFORE, Plaintiff seeks entry of an order for Count XV granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this court deems just and proper in the circumstances including a possible award of punitive damages if this Court later deems such damages to be applicable.

<u>COUNT XVI</u>
**Wrongful Termination in Violation of the Missouri Whistleblower Protection Act**
**(Against Defendant City of Saint Louis)**

135.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

136.    The City of Saint Louis was an employer of Plaintiff as defined by RSMo § 285.575 (the "Whistleblower Protection Act").

137.    Prior to the termination of his employment, Plaintiff had reported unlawful conduct as defined by the Whistleblower Protection Act to proper authorities and was at all times relevant a "protected person" pursuant to the Whistleblower Protection Act.

138.    Plaintiff's actions as a protected person under the Whistleblower Protection Act was a motivating factor in the City of Saint Louis's termination of Plaintiff's employment.

139.    Plaintiff terminated Plaintiff's employment in retaliation against Plaintiff for reporting unlawful conduct described above in the Complaint.

WHEREFORE, Plaintiff seeks entry of an order for Count XVI granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, costs, and any other relief that this Court deems just and proper in the circumstances.

### COUNTY XVII
**Wrongful Termination in Violation of the Family Medical Leave Act
(Against Defendant City of Saint Louis)**

140.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

141.    The City of Saint Louis's termination of the Plaintiff's employment was in violation of the Family Medical Leave Act.

WHEREFORE, Plaintiff seeks entry of an order for Count XVII granting Plaintiff an award of in excess of $25,000.00 for compensatory damages, reasonable attorney's fees, cost, and any other relief that this Court deems just and proper in the circumstances.

### DEMAND FOR A JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted,
**LEDBETTER LAW FIRM, LLC**

By:    /s/ Frank R. Ledbetter
       Frank R. Ledbetter, MBE#53521
       130 S. Bemiston Avenue, Suite 304
       Clayton, MO 63105
       (314) 602-1431-Telephone
       (314) 667-3804-Facsimile
       stlatty@gmail.com
       Attorney for Plaintiff